[Civ. No. 7071. First Appellate District, Division Two.—November 8, 1930.]

WILLIAM SILVA, Respondent, v. FRANK KAVERT et al., Appellants.

J. Hampton Hoge for Appellants.

Daniel A. Ryan and George F. Snyder for Respondent.

BURROUGHS, J., *pro tem.*—This is an action for personal injuries. The cause was tried before a jury. The verdict was for defendants and judgment was entered accordingly. Plaintiff thereafter moved for a new trial and the motion was granted upon the ground of insufficiency of the evidence to sustain the verdict.

Defendants appeal from the order granting a new trial. Appellants' sole contention in support of the appeal is that the plaintiff's version of the accident is impossible of credence because of the physical facts as shown by the evidence. Plaintiff was at work as a stevedore in the employ of the Bayside Steamship Company on pier 17 adjoining The Embarcadero, San Francisco. Much of the testimony given refers to a blackboard map made by witnesses with the assistance of the attorneys which is not a part of this record.

However, after a careful study of the evidence as transcribed it appears that pier 17 extends in an easterly and

westerly direction from The Embarcadero into the bay. Through the center of the pier from west to east extends a driveway estimated to be twenty-five feet wide. This driveway is for the use of the public in carrying freight to or from the pier and is marked off from the sides by a seemingly slight depression variously described, but serving the purpose of defining the driveway from the side spaces immediately north and south of it in which freight is stacked to be loaded on ships or carried from the pier. On the day of the accident a ship was on the north side of the pier, and this plaintiff with another stevedore in the employ of the Bayside Steamship Company was engaged in carrying freight on a flat truck from the ship across the driveway and there stacking it. Each flat truck was handled by two men, one pulling on the end of the tongue and one pushing from the rear. Plaintiff's story is that he and his companion worker had placed their flat truck in the space allotted, south of the driveway parallel to the driveway, and that the north side of the flat truck was about four feet south of the south line of the driveway, the tongue of the flat truck being to the east. That plaintiff and companion were in the act of removing a heavy case from the truck to the floor south of the truck; that plaintiff was on the north side of said flat truck pushing the case toward the south side, his companion pulling from the south side, with plaintiff facing south and bracing himself on his right foot which was farthest to the north, when the accident happened. It is undisputed that in some manner one of the wheels of a Ford tractor or its trailer driven by one of the defendants from the western entrance of the pier toward the east ran over the plaintiff's right foot, the injury being on the outside of the foot from the toe toward heel, and more or less on the front of the instep. There is no question as to this fact nor as to the extent of the injury.

Plaintiff contends that as the tractor with its trailer approached the place where he was at work it swerved to the south of the south driveway line and one of the wheels ran over plaintiff's foot while he was in the position above described.

Evidence shows that at some disputed point east of the spot where plaintiff received his injury the tractor and its

trailer were turned across to the north side of the drive-
way to discharge its freight on the north side.

Defendants contend that the tractor with its trailer at no
time swerved from the driveway south of the south driveway
line, but that plaintiff was on or close to the driveway and
that he was working when the driver first saw him at a
distance of fifty or sixty feet, but that when the driver
passed him he was standing still and looking in the direction
of the oncoming tractor; that the plaintiff misjudged his
step and put his right foot under the wheel. Defendant did
not know of the accident until after he had crossed to the
north side of the driveway.

Defendants produced a number of witnesses who testified
to the effect that the space on the south of the driveway in
which plaintiff claims to have been was filled with stacked
freight up to the south line of the driveway, thus making it
impossible for the plaintiff to have been south of the drive-
way, and tending to support defendants' claim that plaintiff
was standing on the driveway.

Plaintiff produced a number of witnesses who testified to
the effect that the space was ample for him to have been
exactly where he claims to have been. It was not disputed
that the men had been at work not over a half hour and
that this was the first load of freight these men had brought
out.

We see nothing physically impossible in the plaintiff's
contention that a wheel traveling east could have struck
plaintiff's right foot at the toe, raking the outside of the
foot toward the heel, with the plaintiff in the position above
described.

It appears more probable than the defendants' contention,
especially in view of the fact that plaintiff was injured in
no way except the injury to his right foot. Had plaintiff
been facing the tractor, and stepped forward, or in any
manner toward the tractor, it is difficult to see how the foot
alone would have been injured.

There are numerous controversies in the evidence. We
have discussed only the one point raised by appellants. Ap-
pellants' authorities are all to the effect that where testi-
mony in the light of undisputed facts is inherently im-
probable and impossible of credence the appellate court is
bound to recognize that certain facts are controlled by

immutable physical laws. (Citing 10 Cal. Jur., p. 1169, sec. 381.)

A careful study of plaintiff's case as transcribed has presented no such difficulty to our minds. The trial judge, having the advantage of seeing and hearing all witnesses, is in a better position to judge the weight and bearing of the evidence offered and the credibility of the witnesses. As said in *Green* v. *Soule,* 145 Cal. 102 [78 Pac. 337, 340]: "The trial court cannot rest upon a conflict in the evidence, but must weigh and consider the evidence for both parties, and determine for itself the just conclusion to be drawn from it. 'Where the decision is against the weight of the evidence it is the duty of that court to grant a new trial.' "

There is conflict in the testimony, but while an appellate court will not review a verdict where the evidence shows a substantial conflict, the trial court is in a very different position on a hearing of a motion for a new trial. As said in *Brush* v. *Pacific Elec. R. R. Co.,* 58 Cal. App. 506 [208 Pac. 997, 1000], "If the trial judge, notwithstanding a conflict in the testimony, is satisfied that the verdict is against the weight of evidence, he may, indeed he should, grant a new trial, although upon the same conflict an appellate court would be bound by the verdict." It is said in 20 Cal. Jur., p. 111, sec. 71, "A motion for a new trial on the ground of the insufficiency of the evidence to justify the verdict or other decision is addressed to the sound legal discretion of the trial court, which has power to set aside a verdict or decision and to grant a new trial, in whole or in part, in every case where, in its judgment, the evidence is insufficient. Accordingly it is settled that an order granting or refusing a new trial on the ground of insufficiency of the evidence or where this is one of the grounds set up is conclusive upon the appellate court and may not be disturbed on appeal, unless it appears that there was a manifest abuse of such discretion."

No abuse of discretion has been shown.

The order is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.